# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM A. FREEMAN, | CASE NO. 4:11-cv-791 |
| Petitioner, | JUDGE JAMES G. CARR |
| v. | MAGISTRATE JUDGE GREG WHITE |
| MARGARET BRADSHAW, Warden | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner, William A. Freeman ("Freeman"), challenges the constitutionality of his conviction in the case of *State v. Freeman*, Mahoning County Court of Common Pleas Case No. 2007-CR-1291.  Freeman, *pro se*, filed a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on April 21, 2011.  On October 27, 2011, Warden Margaret Bradshaw ("Respondent") filed her Answer/Return of Writ.  (ECF No. 9.)  Freeman filed a Traverse on December 27, 2011.  (ECF No. 12.)  For reasons set forth in detail below, it is recommended that Freeman's petition be DENIED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Freeman's conviction as follows:

> [*P2]  On October 2, 2007, Oliver Eaton was sitting in his car in the parking lot of 1629 Shehy, Youngstown, Ohio, when he was allegedly robbed by Hector Perez and Freeman.  That evening, Eaton, Perez and Freeman, among others, were at Amber Horvath's apartment at 1629 Shehy.  Due to an alleged disrespectful act by Eaton towards Perez's fiancee, Perez planned to scare Eaton that night with his shotgun; he allegedly did not plan on robbing Eaton. (Tr. 219).  Perez asserted at trial that Freeman knew of the plan to scare Eaton and brought Perez's gun to him at 1629 Shehy. (Tr. 219).  At trial, Freeman acknowledged that he took the gun to the apartment that night for Perez, but he denied any knowledge of, or involvement in, the alleged robbery of Eaton. (Tr. 350).
>
> [*P3]  According to the victim and Perez, the robbery occurred as follows.  Perez and Freeman approached Eaton while he was in his car; Perez carried the shotgun and Freeman was armed with a knife. (Tr. 177, 185, 227).  Perez shot one round in the air and Freeman slashed the tires of the car. (Tr. 178-179, 184, 225).  Then, while holding a knife to Eaton's side, Freeman went through the victim's pockets and took over $ 900. (Tr. 178-179, 184, 225).  Eaton testified that after Freeman took the money, he allegedly left the scene. (Tr. 185).  A struggle then occurred between Perez and Eaton that resulted in the gun breaking. (Tr. 185 229).  Eaton ran and found a police car nearby in the street. (Tr. 200, 229).  Perez ran up into the apartment at 1629 Shehy and hid the gun. (Tr. 229).  The police arrived, arrested Perez and recovered the gun. (Tr. 185-186, 230).
>
> [*P4]  As a result of the incident, Freeman was charged with one count of aggravated robbery, a violation of R.C. 2911.01(A)(1), (C), a first degree felony, and a firearm specification, a violation of R.C. 2941.145(A). 11/01/07 Indictment. In early January 2008, the trial court ordered a competency evaluation.  In March 2008, upon reviewing the competency report, the trial court found Freeman competent to stand trial. 03/20/08  J.E. Freeman then filed a motion to dismiss based upon a speedy trial violation; the trial court denied the motion. 03/26 /08 Motion to Dismiss.  Trial began on March 31, 2008, and the jury found Freeman guilty of aggravated robbery and guilty of complicity on the gun specification.
>
> [*P5]  Sentencing occurred on April 8, 2008. Freeman received five years for the aggravated robbery conviction and a mandatory three year sentence for the gun specification. 04/10/08  J.E. The sentences were required to be served consecutively. 04/10/08  J.E. Freeman filed a timely appeal from the conviction and sentence.

*State v. Freeman*, 2009 Ohio App. LEXIS 2642, 2009-Ohio-3052 at ¶¶2-5 (Ohio Ct. App., June 19, 2009)**.**

## II. Procedural History

### A. Conviction

On November 1, 2007, a Mahoning County Grand Jury charged Freeman and co-defendant Hector Perez with one count of aggravated robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01(A)(1)(C) together with a firearm specification. (ECF No. 9-1, Exh. 1.)

On April 3, 2008, a jury found Freeman guilty as charged. On April 8, 2008, the trial court sentenced Freeman to consecutive prison terms of five years for aggravated robbery and three years for the firearm specification. (ECF No. 9-1, Exh. 2.)

### B. Direct Appeal

On April 23, 2008, Freeman, through counsel, filed a Notice of Appeal with the Court of Appeals for the Seventh Appellate District ("state appellate court") raising the following assignments of error:

1. The indictment of Appellant fails to state the requisite mens rea for robbery as charged in violation of the Court's holding in State v. Colon. Further, The State fails to argue and/or attempt to prove any mens rea and Appellant was denied due process of law under the Fourteenth Amendment to the United States Constitution and Ohio Constitution therefore, the defect in the indictment permeated this matter and must be viewed as a structural error requiring reversal.

2. The trial court erred when overruling Appellant's motion to dismiss as Appellant was not brought to trial in accordance with his right to a speedy trial pursuant to Section Ten Article One of the Ohio Constitution and the Sixth Amendment to the United States Constitution.

3. The conviction of Appellant is based on insufficient evidence as no evidence pertaining to mens rea was given at trial in violation of Appellants due process rights under both the Fourteenth Amendment to the United States Constitution and Ohio Constitution.

4. Appellant's conviction was against the manifest weight of the evidence and he was denied due process of law under the Fourteenth Amendment to the

>    United States Constitution and Ohio Constitution.
>
> 5.  The trial court erred when it failed to order a second competency evaluation of Appellant after the court doubted Appellant's competency during trial and Appellant was denied due process of law under the Fourteenth Amendment to the United States Constitution and Ohio Constitution.
>
> 6.  Counsel's failure to request a second competency evaluation resulted in ineffective assistance of counsel.

(ECF No. 9-1, Exhs. 3 & 4.)

On June 19, 2009, the state appellate court sustained Freeman's first assignment of error and remanded the case to the trial court for further proceedings. *Freeman*, 2009-Ohio-3052.

On July 9, 2009, the State filed a Notice of Certified Conflict with the Ohio Supreme Court. (ECF No. 9-1, Exh. 10.) On December 17, 2009, the Supreme Court of Ohio found that "[t]he certified question is answered by the court's opinion in *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038" and reversed the state appellate court's decision as to the first assignment of error. *State v. Freeman*, 919 N.E.2d 738, 124 Ohio St. 3d 121, 2009-Ohio-6538 (Ohio 2009). (ECF No. 9-1, Exh. 11.)

**C.  Federal Habeas Petition**

On April 21, 2011, Freeman filed a Petition for Writ of Habeas Corpus and asserted the following ground for relief:[1]

> GROUND ONE: Violation of Due Process and Equal Protection with the *mens rea* in the indictment.
>
> Supporting Facts: The Supreme Court violated the Petitioner's due process and equal protection rights when it reversed the court of appeal decision to reverse the trial court's conviction.

---

[1] As discussed below, Freeman asserts that he placed his petition in the prison mailbox on March 17, 2011. (ECF No. 12.)

(ECF No. 1.)

### III. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

**A. One-Year Limitation**

Respondent asserts that Freeman's petition is time-barred because he did not file within the

one-year limitations period. Freeman's conviction became final on March 17, 2010, ninety days after the Supreme Court of Ohio reversed the state appellate court. (ECF No. 9 at 6.)

Freeman does not dispute Respondent's assertion that the statute of limitations expired on March 18, 2011.[2] (ECF No. 12 at 2.) The petition, however, indicates that it was signed by Freeman on March 17, 2011. (ECF No. 1 at11.) Respondent contends that the Court should not accept Freeman's self-serving date on the petition given that it was not received until April 21, 2011. (ECF No. 9.)

In his traverse, Freeman asserts that he cannot account for why the Court did not receive his petition until April 21, 2011, but contends that on March 17, 2011, he authorized the prison to withdraw funds for postage from his prison account and deposited the petition in the outgoing mailbox. (ECF No. 12.)

The prison mailbox rule, as articulated by the Supreme Court in *Houston v. Lack*, 487 U.S. 266, 276 (1988), holds that a *pro se* prisoner's notice of appeal will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself sees the documents. The *Houston* court adopted the prison "mailbox" rule because it recognized the fact that prisoners cannot take the steps available to other litigants to monitor the processing of filings with the court.

> Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the [petition] is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their [filings] to the vagaries of the

---

[2] Though AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending,'" no post-conviction applications were filed. *See, e.g.*, *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003).

> mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the [filing] was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his [filing] to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his [filing] to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the [filing] on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his [filing] necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities– and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Houston*, 487 U.S. at 271-72.

The mailbox rule was subsequently extended to apply to the timeliness of a state prisoner's filing of a habeas petition under 28 U.S.C. § 2254. *Rules Governing Section 2254 Cases in the United States District Courts*, Rule 3(d). Rule 3(d) incorporated *Houston*'s judicially created rule, and now provides:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

§ 2254, Rule 3(d) (2004).

Therefore, in order to prove a petition timely, a prisoner must demonstrate that he deposited

-7-

the papers with a prison official before the last day for filing.  *See United States v. Ceballos-Martinez*, 387 F.3d 1140, 1143 (10th Cir.), *cert. denied*, 543 U.S. 1005, 125 S.Ct. 624 (2004).  An inmate can establish the date on which he gave the petition to a prison official in two ways.  First, "[i]f the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule." *Id*. at 1144; Rule 3(d).  Second, the inmate may submit a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement setting forth the petition's date of deposit with prison officials and attest that first-class postage was prepaid.  *Id*.

In cases where it is unclear when an inmate deposits legal documents with prison officials, courts have assumed that it was done on the date the document was purportedly signed.  *See Palmer v. McKune*, 2008 U.S. Dist. LEXIS 39166, *15, (D. Kan., May 13, 2008); *United States v. Gray*, 182 F.3d 762, 766 (10th Cir. 1999). *Porter v. Greiner*, No. 00-cv-6047, 2005 U.S. Dist. LEXIS 31828, 2005 WL 3344828, at *7 (E.D.N.Y. Nov. 18, 2005); *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 328 n.4 (W.D.N.Y. 2005); *Pack v. Artuz*, 348 F. Supp. 2d 63, 66 n.2 (S.D.N.Y. 2004); *Johnson v. Coombe*, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001); *Torres v. Irvin*, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998).

Upon review of Freeman's petition, he stated under penalty of perjury that the petition was deposited in the prison mailing system on March 17, 2011.  (ECF No. 1)  In addition, Freeman submitted an "Informal Complaint Resolution" form wherein a Lieutenant Roque indicated that he or she looked into Freeman's complaint that he did not receive a "cash slip" related to his postage. (ECF No. 12-3, Exh. C.)  Lt. Roque reported that "on 3-17-11 we received some legal mail from you and went out on that day ..." *Id*.

Freeman has sufficiently demonstrated that he timely deposited his petition with prison

-8-

officials.  As such, the Court will proceed to consider the merits of Freeman's petition.

### IV.  Review on the Merits[3]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

---

[3] Respondent has not argued that Freeman's petition is unexhausted or procedurally defaulted.

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.    Ground One: Indictment**

In his sole ground for relief, Freeman asserts that his due process rights were violated when the indictment failed to specify the *mens rea* for robbery.  On direct appeal, Freeman argued that the failure to allege a *mens rea* for robbery resulted in structural error and a denial of due process.  (ECF No. 9-1, Exh. 4 at 7-9.)   The Respondent, on the other hand, argues that Freeman's claim fails to state a cognizable ground for relief because there is no federal constitutional right to an indictment.  (ECF No. 9 at 9-10.)  Furthermore, the Respondent asserts that the indictment sufficiently notified Freeman of the charges he faced.  *Id*.

It is well settled that the federal guarantee of a grand jury indictment does not apply to the states.  *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Branzburg v. Hayes*,

408 U.S. 665 (1972)); *accord Riffel v. Erwin*, 2005 U.S. Dist. LEXIS 11666 (S.D. Ohio 2005). In addition, "the Constitution does not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some other manner." *Id*. (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954 (1976)). Nevertheless, the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal defendant "fair notice" of the charges against him to permit adequate preparation of his defense. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977). The fair notice requirement is met when a charged offense "[is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Id*.

Though Respondent does not raise the issue, it is questionable whether Freeman fairly presented ground one of his petition to the state courts as a distinct *federal* constitutional claim. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

-11-

On direct appeal, Freeman indeed alleged that he was "denied due process of law" because the indictment failed to allege a culpable mental state. (ECF No. 9-1, Exh. 4 at 7-9.) Freeman, however, did not rely upon federal cases employing federal constitutional analysis or allege facts well within the mainstream of constitutional law. *Id*. Freeman cited only state law in his appellate brief, and primarily relied upon *State v. Colon*, 885 N.E.2d 917, 118 Ohio St.3d 26 (Ohio 2008). *Id*. The Court does not believe that the *Colon* court employed a federal constitutional analysis. While the *Colon* decision draws parallels between the constitutional right to a grand jury indictment in federal criminal proceedings and the right to a grand jury indictment as provided for in the Ohio constitution, the *Colon* decision was firmly rooted in *state* law. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (*citing Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986)). Moreover, passing references to a denial of "due process of law," alone are insufficient.[4]

The indictment charged Freeman as follows:

> The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County of Mahoning, on their oaths, and in the name and by the authority of the

---

[4] "To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments." *Blackmon v. Booker*, 394 F.3d 399, 400-401 (6th Cir. 2004). In *Blackmon*, the Sixth Circuit found that a petitioner's "naked assertion" in his brief headings and conclusions that his rights to a fair trial and due process were violated was insufficient to constitute fair presentment where the petitioner "failed to develop any cogent arguments regarding those rights beyond the naked assertion that they were violated." *Id*.; *accord Logan v. Miller*, 2011 U.S. Dist. LEXIS 48859 at *12 (N.D. Ohio Mar. 29, 2011); *see also Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.")

-12-

> State of Ohio, do find and present that on or about October 2, 2007, at Mahoning County, HECTOR PEREZ and WILLIAM A. FREEMAN did in attempting or committing a theft offense as defined in Section 2913.01 of the Revised Code against Oliver Eaton, Jr., or in fleeing immediately after such attempt or offense, have a deadly weapon as defined in Section 2923.11 of the Revised Code, on or about their persons or under their control and did display the weapon, brandish it, indicate that they possessed it or used said weapon.  In violation of Section 291 1.01 (A)(l)(C) of the Revised Code, a Felony of the First Degree, and against the peace and dignity of the State of Ohio.
>
> ### SPECIFICATION
>
> The Grand Jury further finds and specifies that the said offenders had a firearm on or about their persons or under their control while committing the offense and displayed the firearm, brandished the firearm, indicated that they possessed the firearm or used it to facilitate the offense, contrary to and in violation of Section 2941.145(A) of the Revised Code.

(ECF No. 9-1, Exh. 1.)

Putting aside the issue of whether Freeman fairly presented ground one, his claim is not cognizable.  Although the State of Ohio may require indictment by a grand jury pursuant to its own constitution, any violation of such right is a matter of state law.  The U.S. Supreme Court has stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  To be entitled to relief in federal habeas corpus, a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution.  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  The violation of the state right to a grand jury indictment in Ohio, and all the procedural safeguards appurtenant thereto, does not automatically implicate a *federal* constitutional right.

Freeman is correct that the indictment does not set forth any *mens rea* for robbery. Nonetheless, that omission alone is not a federal constitutional violation so long as he received fair notice of the charged offense.  This simply requires that the accused be apprised with some

-13-

precision and certainty of the crime with which he stands charged. In *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006), it was found that fair notice was provided to a defendant even though the indictment did not expressly set out the *mens rea*. The *Williams* court explained as follows:

> The indictment here undoubtedly provided Williams with fair notice of the charges against him. The indictment's reliance on references to the principal statutes to identify the mens rea elements does not render the indictment insufficient because Williams still had adequate notice of the offenses to prepare his defense. Although the exact mens rea requirements were not stated in the indictment, the indictment precisely stated the offenses with which Williams was charged so that there could be no confusion on this point. Moreover, the indictment referenced the principal statutes for the mens rea requirement, and thus Williams could have located the statutes and determined the mental states required for the offenses with which he was charged. The sufficiency of the indictment is bolstered by our prior determination that even in a federal prosecution, which is held to the more stringent requirements imposed by the Fifth Amendment Grand Jury Clause, an indictment is sufficient when it refers to the appropriate statute for the mens rea element rather than explicitly specifying the required mental state. *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). For these reasons, the indictment in this state prosecution satisfied the mandates of due process.

*Williams*, 467 F.3d at 535-36 (footnotes omitted); *accord Peeks v. Sheets*, 2010 U.S. Dist. LEXIS 21202 (S.D. Ohio Mar. 9, 2010)

Freeman was clearly apprised of the fact that he was being charged with aggravated robbery in violation of O.R.C. § 2911.01(A)(1). (ECF No. 9-1, Exh. 1.) The indictment specifically identified the elements of the crime: (1) a theft or attempted theft as defined in O.R.C. § 2913.01 and, (2) brandishing, displaying, using, or indicating possession of a deadly weapon.[5] The statutes

---

[5] Although the state appellate court found merit in Freeman's argument and sustained his assignment of error, the Supreme Court overruled the appellate court on this point based on its decision in *State v. Lester*, 916 N.E.2d 1038, 123 Ohio St.3d 396 (Ohio 2009). *See State v. Freeman*, 919 N.E.2d 738, 124 Ohio St. 3d 121 (Ohio 2009). In *Lester*, the Ohio Supreme Court expressly addressed the issue:

> The issue before us is whether, in the crime of aggravated robbery in violation of R.C. 2911.01(A)(1), the element of brandishing, displaying,

-14-

themselves identify the *mens rea* where it is applicable, and Freeman, or his counsel, could easily have located the statutes and determined the mental states required for the charged offense.[6]  This Court agrees with the reasoning of the Southern District Court of Ohio in an analogous case:

> Here the indictment specifically identified the type of crime petitioner allegedly committed ..., the date of the crime, and the names of the alleged victims. That information was sufficient to allow him to prepare a defense, and he does not argue otherwise.  The fact that the indictment did not specify a *mens rea* requirement - just as the underlying Ohio statutes do not - does not mean that petitioner was unaware that the state had to prove *mens rea*, or unaware what *mens rea* applied to these crimes.

*Arthurs v. Warden, Warren Corr. Inst.*, 2012 U.S. Dist. LEXIS 39779 at \*\*17-18 (S.D. Ohio Mar. 23, 2012).

This Court can grant habeas relief only where a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Given the Sixth Circuit's decision in *Williams* and Freeman's

---

> using, or indicating possession of a deadly weapon has a mens rea of recklessness, or whether strict liability is imposed with regard to that element.  We conclude that R.C. 2911.01(A)(1) imposes strict liability for that element. Consequently, we reverse the court of appeals' judgment.

*Lester*, 123 Ohio St,3d at 396.  Although Freeman argues that the Supreme Court's decision was "substantively unreasonable," this Court cannot overrule the interpretation of a state law.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."); *see also Riley v. Woods*, 2010 U.S. Dist. LEXIS 81453, 11-12 (E.D. Mich., Aug. 11, 2010) ("A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes.") (*citing Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002); *Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998)).

[6]  For example, the theft statute states that a person's conduct must be done "knowingly."  *See* O.R.C. § 2913.02(A).  The element of brandishing, displaying, using, or indicating possession of a deadly weapon, as explained above, is strict liability, rendering notice unnecessary as no mental state needed to be proved.

-15-

failure to identify any clearly established law, as found by the United States Supreme Court, requiring charging documents in state criminal proceedings to explicitly set forth the requisite *mens rea* of the offense charged, Freeman's sole ground for relief is without merit.

## V. Conclusion

For the foregoing reasons, it is recommended that this matter be DENIED.

/s/ *Greg White*
U.S. Magistrate Judge

Date: May 7, 2012

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**